UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────────

In Re:

| | |
|---|---|
| MICHAEL F. DECKER and | Chapter 7 |
| BETH A. DECKER, | Case No.: 06-60886 |
|                  Debtors. | |

───────────────────────────────────────────────

In Re:

| | |
|---|---|
| JAMES C. COLLINS, ESQ., as Chapter 7 Trustee, | Adv. Pro. No.: 10-80029 |
|                  Plaintiff, | |

vs.

MICHAEL F. DECKER, BETH A. DECKER,
CLAYTON H. WARNER, FRIEND L. DECKER,
and IRENE LOUISE DECKER,

                 Defendants.

───────────────────────────────────────────────

APPEARANCES:

JAMES C. COLLINS, ESQ.
*Chapter 7 Trustee*
*Attorney for Plaintiff*
P.O. Box 713
Whitney Point, New York 13862-0713

THOMAS MILLER, ESQ.
*Attorney for Defendants*
49 Court Street
1st Floor
Binghamton, New York 13901

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff James C. Collins, Esq., as Chapter 7 Trustee (the "Trustee"), commenced the above-referenced adversary proceeding by filing an adversary complaint seeking, *inter alia*, to (1) revoke the discharge issued to Michael F. Decker and Beth A. Decker ("Mr. or Ms. Decker,"

or, collectively, "Debtors") pursuant to 11 U.S.C. § 727(d)(1) and (2) and (2) avoid certain alleged fraudulent post-petition transfers of real property pursuant to 11 U.S.C. § 549(a).[1] (Adv. No. 1.)[2] On June 21, 2010, Debtors, together with Clayton H. Warner ("Clayton"), Friend L. Decker ("Friend"), and Irene Louise Decker ("Irene") (collectively, "Non-Debtor Defendants"), filed a joint answer wherein they asserted the affirmative defense of laches. (Adv. No. 4.) Pursuant to the Court's July 30, 2010 Scheduling Order (Adv. No. 7), the trial in this matter was held on April 4, 2011, at which all of the Trustee's proposed exhibits were stipulated into evidence. At the close of the trial, the parties were afforded an opportunity to submit post-trial memoranda of law on or before May 2, 2011. Debtors and Non-Debtor Defendants timely submitted a joint memorandum on May 2, 2011 (Adv. No. 21), and the Trustee filed a memorandum on May 4, 2011 (Adv. No. 22).[3] The matter was thereafter submitted on the pleadings, the trial record, and the parties' post-trial memoranda. As is required by Federal Rule of Civil Procedure 52, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052, the Court now renders the following findings of fact and conclusions of law in full and final resolution of this dispute.

## JURISDICTION

The Court has jurisdiction over the parties and subject matter of this core adversary proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(H), (J), and 1334(b).

## FACTS

The facts relevant to this dispute are set forth below.

---

[1] All further section references herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2010).
[2] Documents filed in the adversary proceeding will be referred to herein as "Adv. No. __." Documents filed in the main case will be referred to herein as "No. __."
[3] Although the Trustee's memorandum was filed after the submission deadline, and notwithstanding that the Court ordinarily strictly adheres to Court-imposed deadlines, the Court finds the late filing to be of no consequence in this case because the Trustee's arguments made therein are the same as those advanced by him throughout the course of this litigation.

1. Debtors filed a voluntary joint petition for Chapter 13 relief on May 4, 2006 (No. 1), listing on Schedule A, titled "Real Property," three parcels of jointly owned real property: (1) a single family residence located at 280 Oquaga Lake Road, Deposit, New York, valued at $90,000.00, and secured by a claim in the amount of $80,912.00 (the "Former Residence"); (2) a single family residence located at 340 Ocquaga Lake Road, Deposit, New York, valued at $150,000.00, and secured by a claim in the amount of $88,209.00; and (3) vacant land comprised of a cornfield located on Main Street, Deposit, New York, valued at $9,000.00, and owned free and clear (the "Cornfield") (Pl.'s Ex. 1).

2. Pre-petition, by deed dated October 4, 2000, Ms. Decker acquired her ownership interest in the Cornfield from her grandmother, Margie L. Warner. (Pl.'s Ex. 6.) The Cornfield adjoins property owned by Ms. Decker's grandparents, and the family had planned for Debtors to move in with Ms. Decker's surviving grandparent upon the death of the other grandparent. Because Mr. Decker fell ill, however, Debtors were unable to do so and Clayton, Ms. Decker's father, instead assumed this responsibility of caring for the surviving grandparent.

3. As to the characteristics of the Cornfield, Ms. Decker testified that the property has been minimally used for community recreation, but that it is unmarketable due to numerous factors, including the fact that it is landlocked and located in a flood plain, an easement and power lines run through the center of the parcel, and Delaware County installed a dyke along the backside of the property to control frequent flooding from a nearby brook.

4. Ms. Decker testified that she was a founding member of the Deposit Family Recreation Group, a non-profit organization whose aim was to provide recreational opportunities for children in Delaware County, and it was her intent, along with other family members, to develop and improve the Cornfield for use by this organization.

5. In the early 1990s, Ms. Decker entered into an option contract with a local non-profit group, which provided that if the group could raise $1 Million in seven years, it could build a track field or community-based facility on the Cornfield. That funding never materialized and, thus, the option was never exercised. No improvements have been made to the Cornfield during Ms. Decker's ownership.

6. Post-petition, by deed dated February 20, 2009, Ms. Decker transferred the Cornfield to Clayton (the "2009 Transfer"). (Pl.'s Ex. 7.)

7. The 2009 Transfer deed, which was recorded in the Delaware County Clerk's Office on March 25, 2009, states that the consideration exchanged between the parties was "One Dollar ($1.00)." (*Id.*)

8. On April 24, 2009, Ms. Decker executed a corrective deed with respect to the 2009 Transfer. (Pl.'s Ex. 8.)

9.  Ms. Decker testified that she transferred the Cornfield to Clayton because her husband had become ill in 2007 and, by early 2009, he was heavily medicated and needed full-time care, thus leaving her no time to devote to community outreach or activities. She believed her father would be better able to work with community groups in order to make improvements to or maintain the Cornfield for recreational use.

10. In their Answer, Debtors stated that Ms. Decker made the 2009 Transfer to her father in part because he had paid for and provided them with a mobile home when their Former Residence, which was uninsured, was completely destroyed by fire. Debtors currently reside in the mobile home. Ms. Decker confirmed these facts at trial.

11. Ms. Decker testified that, at the time of the 2009 Transfer, she believed Debtors' bankruptcy was over because Debtors had completed the required post-petition financial management course and had been issued a discharge.

12. Pre-petition, on April 26, 2004, Friend and Louise transferred by quitclaim deed three parcels of real property comprised of 81.70 acres, with 1.80 acres identified on the Broome County tax maps as 326 Oquaga Lake Road, Sanford, New York, and 6.50 acres identified on the Broome County tax maps as 372 Oquaga Lake Road, Sanford, New York (collectively, the "Decker Homestead"), to Mr. Decker and his five siblings (the "2004 Transfer"), subject to revocation and their reservation of a life estate. (Pl.'s Ex. 4.) Accordingly, Mr. Decker and his siblings each acquired a revocable one-sixth remainder interest in the properties transferred.

13. The 2004 Transfer deed was recorded in the Broome County Clerk's Office on April 27, 2004. (*Id.*)

14. Post-petition, on May 24, 2008, Mr. Decker and his siblings reconveyed the Decker Homestead back to their parents (the "2008 Reconveyance"). (Pl.'s Ex. 5.)

15. The 2008 Reconveyance deed, which was recorded in the Broome County Clerk's Office on June 11, 2008, states that the consideration exchanged between the parties was "one dollar ($1.00)." (*Id.*)

16. Friend testified that he and his wife made the 2004 Transfer for estate planning purposes in order to preserve what few assets they had to pass on to their children, the transferred acreage was their homestead, and that it had been in the family for generations.

17. Friend testified that he initiated the 2008 Reconveyance upon the advice of counsel because he was considering using a portion of the property for the

        Millennium Pipeline, a project sponsored in part by National Grid to provide consumers in the Northeast with natural gas infrastructure,[4] and he believed he was in the best position to explore and address a pipeline lease at that time in light of Mr. Decker's health problems.

18. Friend's attorney prepared the deed for the 2008 Reconveyance, and Friend presented it to Mr. Decker, who signed it the same day.

19. Both Friend and Louise testified that they were unaware of Debtors' bankruptcy filing at the time of the 2008 Reconveyance, and that they did not learn of same until they were served by the Trustee with the adversary complaint in this matter.

20. The 2004 Transfer, the 2008 Reconveyance, and the 2009 Transfer were not referenced in Debtors' petition and accompanying documents, either initially or by way of amendment.

21. Ms. Decker testified that prior to filing for bankruptcy, she personally went to the Broome County Courthouse to obtain copies of deeds and business records that would be needed in connection with Debtors' bankruptcy, and she delivered those documents to Attorney Miller. Her search did not uncover documents related to the 2004 Transfer.

22. Debtors were unable to maintain or confirm a Chapter 13 plan of reorganization and, thus, filed a notice to voluntarily convert their case to one under Chapter 7 on March 26, 2007. (No. 71.) Ms. Decker testified that this was due in part to Mr. Decker's diagnosis and battle with psychosis, which ultimately led to his permanent loss of employment and their loss of income.

23. Conversion occurred on April 11, 2007.

24. The Trustee was assigned to Debtors' converted case and he examined Debtors at the initial § 341 Meeting of Creditors held on May 21, 2007.

25. An Order discharging Debtors was issued on July 9, 2007. (No. 82.)

26. On October 21, 2009, the Trustee filed a motion to compel turnover of the Cornfield (No. 95), but the Trustee later withdrew same on June 8, 2010.

27. On June 11, 2010, the Trustee commenced the instant adversary proceeding.

---

[4] *See* the Millennium Pipeline Company, L.L.C.'s Web site located at *http://www.millenniumpipeline.com* for more information about this project.

**ARGUMENTS**

The Trustee's claims and arguments were narrowed down during a routine pre-trial conference held on April 4, 2011. At that time, the Trustee advised the Court and opposing counsel that he intended to pursue only the §§ 549(a) and 727(d) causes of action set forth in the adversary complaint. In his post-trial memorandum, however, the Trustee addresses only the first of these claims. He argues that both the 2008 Reconveyance and the 2009 Transfer were unauthorized post-petition transfers that led to the diminution of Debtors' bankruptcy estate. He further argues that under Federal Rule of Bankruptcy Procedure 6001, Debtors have the burden of proving the validity of these transfers, which they have not done in this case. The Trustee appears to have abandoned his claims under § 727(d), perhaps in light of the testimony adduced at trial, as there is no mention of the same in his post-trial memorandum.

Debtors contend that the Trustee's § 549(a) claim with respect to the 2008 Reconveyance is both procedurally defective and substantively without merit. First, Debtors argue that the Trustee's claim to avoid the 2008 Reconveyance is time barred by the two year limitation contained in subsection (d)(1). That subsection requires an adversary proceeding under § 549 to be commenced "after the earlier of two years after the date of the transfer sought to be avoided or the time the case is closed or dismissed." Second, Debtors assert that, even if the claim is timely, it is without merit because the 2008 Reconveyance did not in any way diminish the funds available to Debtors' creditors. Specifically, Debtors argue that the Trustee's avoidance powers are limited to transfers of "property of the estate," and, in this case, a revocable remainder interest in the Decker Homestead while Friend and Louise are alive and well would not vest any beneficial interest in the Trustee that could ultimately inure to the benefit of Debtors' creditors. Debtors further assert that the alleged lack of consideration for the

2008 Reconveyance is immaterial because the granting of the interest in the first instance was subject to revocation and it was done for a proper, non-fraudulent purpose, which Friend attested to. In essence, Debtors assert that Friend and Louse should be treated as good faith purchasers under § 549(c), which limits the Trustee's avoidance powers if the transfer in question was for "present fair equivalent value" to a good faith purchaser who did not have knowledge of the commencement of the bankruptcy case.

With respect to the 2009 Transfer, Debtors contend that the Trustee should be barred under the equitable doctrine of laches from pursuing this § 549(a) claim because of his own delay in seeking to administer the asset. Debtors point out that, although the asset was listed on their Schedule A, the Trustee took no action with respect to the same until October 21, 2009, when he moved to compel turnover of the Cornfield. Debtors emphasize that this occurred more than twenty-seven months after issuance of Debtors' discharge, and seven months after Ms. Decker transferred the Cornfield to Clayton. Under these circumstances, Debtors argue that Ms. Decker had every right to conclude that she was free to transfer the Cornfield to Clayton to carry forward the family's commitment to the community. Generally, Debtors argue that there must be an outer limit to the Trustee's discretion and the time needed to administer a case. In this case, they believe that limit was exceeded and that the Trustee should now be prevented from seeking to avoid the 2009 Transfer.

Although the Trustee seemingly no longer seeks to revoke the discharge issued to Debtors, in their post-trial memorandum, Debtors nonetheless contend that the Trustee has failed to meet his burden of proving either extrinsic fraud sufficient to prevail under § 727(d)(1), or the requisite fraudulent intent in failing to report the entitlement to property or to deliver or surrender such property to the trustee under subsection (d)(2). With respect to both the Decker

Homestead and the Cornfield, Debtors suggest that mere deeds alone are insufficient proof and, given the record and testimony elicited, the Trustee simply cannot show that Debtors, individually or acting in concert, committed any wrongdoing that would justify revocation of their discharge.

**DISCUSSION**

*I.     The Trustee's § 549(a) Claims*

The Court will begin with the Trustee's § 549(a) claims against Debtors.  A Chapter 7 trustee may avoid a post-petition transfer of property under this section if the trustee satisfies the following elements: (1) the transfer involved property of the estate; (2) the transfer occurred after commencement of the case; and (3) the transfer was not authorized by the Court or any provision of Title 11.  1-5 Collier Pamphlet Ed. 11 U.S.C. § 549 (MB 2010) (citing *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 459 (6th Cir. 1991)).  Under § 549(d)(1), however, a two-year statute of limitations applies to such actions.  The Court will now separately examine whether the Trustee may avoid the 2008 Reconveyance and/or the 2009 Transfer.

*A.     The Decker Homestead*

Although Debtors have focused on the recording date with respect to the 2008 Reconveyance and the timeliness of the Trustee's suit, the relevant date is the date of the transfer, which occurred on February 24, 2008.  As noted *infra*, the Trustee did not initiate this adversary proceeding until June 11, 2010.  Since the transfer date occurred more than two years before the Trustee initiated the § 549 action, the Trustee's claim to avoid the 2008 Reconveyance is untimely.

It is also unclear from the record in this case when the Trustee first learned of Mr. Decker's interest in the Decker Homestead or the post-petition reconveyance of that interest to

his parents. Though this could be relevant to preserve the Trustee's avoidance claim with respect to the 2008 Reconveyance, the Trustee did not pursue an equitable tolling argument to defeat Debtors' § 549(d)(1) defense.[5] Thus, the Court's analysis ends here.

### B. The Cornfield

The Trustee does not dispute that the Cornfield was properly disclosed by Debtors, who listed the property on their Schedule A. For this reason, and due to the Trustee's delay in marshalling the asset for the benefit of creditors, Debtors contend that the Trustee's claim to avoid the 2009 Transfer should be barred by the doctrine of laches. "The equitable doctrine of laches precludes the prosecution of stale causes of action if the party bringing the action lacks diligence in pursuing his or her claim and the party asserting the defense has been prejudiced by that lack of diligence." *In re SPRINGFIELD FURNITURE, INC.*, 145 B.R. 520, 532 (citing *Newport News Shipbldg. and Dry Dock Co. v. Parker*, 935 F.2d 20, 27 (4th Cir. 1991) (citing *Costello v. United States*, 365 U.S. 265 (1961)). As held by the Second Circuit,

---

[5] Even if the Trustee had raised the doctrine of equitable tolling, the Trustee would have needed to make a heightened showing given the facts of this case.

> In bankruptcy actions where a transaction is actively concealed by the debtor and/or the defendant, § 546(a)(1) and § 546(d)(1) are tolled until there is discovery of the fraud. In such instances there is no obligation on the part of the trustee to use due diligence to discover the fraud. *In re Pomaville*, 190 B.R. 632 (Bankr. D. Minn. 1995). Such active concealment can include efforts by the debtor and/or the defendant to mislead the trustee through false responses to discovery, or by making assurances that the subject transaction is neither unusual nor suspicious. *In re Candor Diamond Corp.*, 76 B.R. 342 (Bankr. S.D.N.Y. 1987). And a debtor's fraudulent concealment may be imputed to other defendants for purposes of equitable tolling.
>
> In the absence of active concealment, the trustee must prove that he could not uncover the claim within the limitations period despite the exercise of due diligence. But what constitutes due diligence is limited by the circumstances of the case, and specifically by economic exigencies.
>
> And in addition to active or negligent concealment, 'extraordinary circumstances' may be sufficient to invoke equitable tolling. Such extraordinary circumstances may include the pendency of other legal proceedings which prevent enforcement of the subject claim, particularly if such other legal proceedings are perpetuated by the defendants in the instant action.

*Kearns Motor Co. v. Cimino (In re Dreiling)*, 233 B.R. 848, 878 (Bankr. D. Colo. 1999) (internal citations omitted). Here, there was no active concealment by Debtors. In fact, Debtors did not even know of Mr. Decker's interest in the Decker Homestead until, at the earliest, Mr. Decker was presented with the deed to reconvey the same. Further, given the testimony from Ms. Decker, Friend, and Louise regarding Mr. Decker's mental state, it is unclear whether Mr. Decker could have ever understood that he held an interest in the Decker Homestead. Given these facts, the determinative inquiry would have centered on the Trustee's due diligence.

> Laches is based on the maxim, 'vigilantibus non dormientibus aequitas subvenit,' meaning 'equity aids the vigilant, not those who sleep on their rights.' It is an equitable defense that 'bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.' A party asserting the defense of laches must establish that: (1) the plaintiff knew of the defendant's mis-conduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay.

*Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) (internal citations omitted).

As stated *infra*, the Trustee first examined Debtors on May 21, 2007, but he did not affirmatively seek to administer the Cornfield until October 21, 2009, when he moved for turnover. The Trustee has not offered an explanation for his unreasonable delay of twenty-nine months, or otherwise proven that he sought to administer the Cornfield as a non-exempt asset within the customary timeframe for a Chapter 7 case. This unexcused delay has been prejudicial to Debtors because it has prevented them from experiencing the fresh start that they are entitled to. Notwithstanding the granting of their discharge, and the Trustee's immediate knowledge of the non-exempt Cornfield, Debtors remained in Chapter 7 bankruptcy unnecessarily for a prolonged period of time. The Court, therefore, must recognize the laches defense raised by Debtors with respect to the Trustee's avoidance claim regarding the 2009 Transfer based on the equities of this case.

II.     *The Trustee's § 727(d) Claims*

Notwithstanding that the Trustee appears to have abandoned his claims against both Debtors, the Court will address the same because the Trustee has not formally withdrawn these claims. It is well settled that "'[r]evocation of a debtor's discharge is an extraordinary remedy, so § 727(d) is liberally construed in favor of the debtor and strictly construed against the party seeking revocation.'" *Humphreys v. Stedham (In re Stedham)*, 327 B.R. 889, 897 (Bankr. W.D. Tenn. 2005) (quoting *Buckeye Retirement Co. v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr.

E.D. Tenn. 2003)).  Under § 727(d)(1), it is the debtor's actual fraud in obtaining the discharge that warrants revocation, provided the objecting party was unaware of the debtor's fraud prior to the discharge.  *Id.* (citing cases).  Under  § 727(d)(2), the moving party must show not only that the debtor failed to report the acquisition of or entitlement to property, but rather that the debtor "knowingly and fraudulently" failed to report this information.  6-727 Collier on Bankruptcy ¶ 727.17 (MB 2011).  In this case, the Trustee failed to prove that either Mr. Decker acted with the requisite fraudulent intent when he failed to disclose the Decker Homestead or when he reconveyed the Decker Homestead to his parents, or that Ms. Decker acted with the requisite fraudulent intent when she transferred the Cornfield to her father.  This lack of proof is fatal to the Trustee's case.  It is evident from the testimony of Ms. Decker, Friend, and Clayton, all of whom the Court found to be extremely credible, that the 2008 Reconveyance and 2009 Transfer were done for legitimate, non-fraudulent purposes.  Under such circumstances, Debtors are entitled to maintain their discharge.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED, that the Trustee's adversary complaint against Debtors and Non-Debtor Defendants is hereby dismissed in its entirety.

IT IS SO ORDERED.

Dated at Utica, New York
This 1st day of June 2011

                                        _/s/ Diane Davis_____
                                        DIANE DAVIS
                                        United States Bankruptcy Judge